# DIEZ

*v.*

# GREEN ET AL.

San Juan, Equity, No. 993.

BILL TO SET ASIDE MORTGAGE AS CLOUD ON TITLE.

Mortgage—Collateral Contract.

1. Under the Civil Code, § 1758, a mortgage is a collateral contract and requires the coexistence of an independent debt, and a power of attorney to create such a debt will be strictly construed under § 1615 of the Civil Code.

Power of Attorney—Silent Partner.

2. Quære, whether a power of attorney given to an active partner confers on him the right to make a mortgage to secure the firm business without reformation in equity.

Mortgage—Ratification.

3. A ratification cannot be inferred without knowledge of the facts making up the matter to be ratified, whether at civil or common law, and the contract to be validated must have been a valid one.

Ratification—Elements.

4. Ratification is itself a kind of contract, and must have the elements of consent, object, and consideration required in a contract.

Mortgage—Ratification.

5. While under Civil Code, § 1176, a mortgage to be valid must be recorded, this is not true of a parol ratification, particularly in a court of equity where cancelation of a mortgage is sought by the person so ratifying.

Opinion filed November 27, 1917.

NOTE.—As to what will constitute an implied ratification of an unauthorized loan affected by an agent, see notes in 6 L.R.A.(N.S.) 311, and 52 L.R.A.(N.S.) 571.

Diez v. Green.

## Statement of Facts.

The bill in this cause was filed June 4, 1917, and seeks to set aside as null and void a certain mortgage dated June 1, 1914, made in the name of the plaintiff by the defendant Perez as his attorney in fact, and also to set aside the record of said mortgage in the registry of property of Mayaguez. The property described in the mortgage is the Hacienda Mallorquina, a coffee property in the municipality of Añasco, which is described. It was purchased by the plaintiff from the defendant Perez in 1913, as duly recorded. The mortgage claims to be given to secure a debt of $5,000 by the plaintiff to the defendant Green, due twelve months after date, with interest at 1 per cent per month, but plaintiff alleges it is not true that at that or any other time he owed defendant Green any money at all, and that this was known to both defendants, and that plaintiff had no knowledge of this deed or its record until on or about April 25, 1917. Defendant Perez did not answer, but no decree pro confesso was taken against him. Defendant Green answered June 21, 1917, denying the allegations of the bill as to plaintiff's not owing defendant Green $5,000, and alleges that plaintiff owed him the sum of $2,800 prior thereto, and that $2,200 was handed by defendant Green to plaintiff's attorney in fact on May 25, 1914, and was so delivered to defendant Perez, as attorney in fact for plaintiff under a power of attorney of May 19, 1913. That the mortgage was recorded on June 15, 1914, and that the plaintiff had knowledge of the execution of the mortgage in August, 1914, on his return from Spain and accepted this act of his attorney in fact. The

said attorney in fact paid interest on the mortgage up to and including April, 1916.

The evidence shows that plaintiff was a silent partner in the firm of Diez & Perez, S. en C., the Diez named being the son of the silent partner, and that the transaction now in litigation began with the loan of $1,000 by defendant Green to that firm. Upon maturity the firm asked an increase up to $2,800, and Green agreed to do this provided he had the guaranty of the plaintiff. That later upon maturity of this sum the firm applied to have the loan increased to $5,000, it being alleged that the increase was to be sent to plaintiff, who was at that time absent in Spain. The additional loan was made and the mortgage executed June 1, 1914, purporting to be under the power of attorney given by Diez to Perez May 19, 1913, before leaving for Spain. The mortgage recites that Diez owed $5,000 to Green, to be paid within one year, with interest at 1 per cent, and contains the usual provisions.

The power of attorney of the 19th of May covers the right to purchase real and personal property, sell real property, (3) "grant, accept, assign, and cancel all classes of real rights, either of mortgage, liens or any other," make "promissory notes, checks, and any other class of orders of payment and mercantile documents," make leases, withdraw money from banks, (7) "organize mercantile companies (compañias), dissolve or liquidate them, with the same authority and powers as given by law to the principal for the constitution, dissolution, and liquidation of such associations," administer property, exact accounts, with power of subrogation, with right to appoint lawyers. "The principal binds himself to abide by and submit to all acts and contracts executed by his attorney in fact within

the powers given him in this deed of power of attorney, it being understood that the powers herein conferred carry with them all such powers as may be necessary for the execution of the same, authorizing him especially to execute public or private deeds in pursuance of the contracts which may arise hereunder."

The testimony does not show what information went to Diez in Spain of the mortgage in question, but the evidence is that a few days after his return he was informed that the debt of $2,200 had been increased to $5,000, and secured by a mortgage upon plaintiff's property, whereupon plaintiff said that was all right, to keep on dealing with Perez. Plaintiff denies this conversation, denies that he knew anything about the mortgage until the 25th of April, 1917, a short time before the bill was filed, and he denies that he ever obtained any money from defendant Green as a loan, directly or indirectly. He returned from Spain the 28th or 29th of August, 1914, and neither Green nor his agent Urrutia ever came to his house to collect interest or discuss the matter. All parties to the suit are connected by marriage or otherwise. Plaintiff never asked any account from his attorney in fact. He learned how his property stood, because at the end of the crop year the proceeds were turned over to the firm, and the agent said everything was going on all right. The plaintiff conversed often with his agent, defendant Perez, who was his son-in-law, about his business, but the mortgage was never mentioned until plaintiff had already learned of the matter from Green on April 25, 1917. Personal relations remained unchanged, but the power of attorney was revoked. The account of plaintiff with the firm of Diez & Perez taken from the books shows no entry on the subject

of this mortgage. The testimony of Perez is that Green knew that the various sums of money loaned were for the firm of Diez & Perez, and that he never spoke to plaintiff about this mortgage prior to April 25, 1917. The necessity for doing so came about because of the fire which ended the business of the firm, the firm becoming insolvent.

*Messrs. Francis & Soto* for plaintiff.

*Mr. Frank Martinez* for defendants.

HAMILTON, Judge, delivered the following opinion:

The bill seeks to cancel a mortgage as a cloud upon the title, alleging that the agent who made it in the name of the plaintiff was not authorized to do so, and that there is no consideration to support it.

1. Under the Civil Code a mortgage is purely a collateral contract, and for its existence there must be a different obligation or debt.

Sec. 1758. "The following are essential requisites of the contracts of pledge and of mortgage:

"1. That they be constituted to secure the fulfilment of a principal obligation. 2. That the thing pledged or mortgaged is owned by the person who pledges or mortgages it. 3. That the persons who constitute the pledge or mortgage have the free disposition of their property, and, should they not have it, that they are legally authorized for the purpose. Third persons, strangers to the principal obligation, may secure the latter by

Diez v. Green.

pledging or mortgaging their own property." [Compilation 1911, § 4864.]

This principle is well established. Escriche, Diccionario Razonado, p. 822, s. v. hipoteca. It is very important in this case whether there was a debt which the mortgage was designed to secure. It is not at all necessary that the debt be that of the mortgagor, but it is necessary that the mortgage be constituted by the mortgagor or by some one having the proper authority from him. The facts seem to show that there was a firm of Diez & Perez, of which the plaintiff herein was the silent partner, and that this firm was indebted to defendant Green while the plaintiff was in Porto Rico. While there is no proof, it may be presumed that the silent partner knew enough of the business to be informed of this fact. The power of attorney which he gave Perez in terms gives Perez the right to make a mortgage, and ordinarily the presumption would be that this was to secure the debt of Diez himself. A power of attorney under the civil, as well as under the common, law, is to be construed strictly, and additional powers are not to be imported into it. A power to execute a mortgage is a power to execute a mortgage when the principal owes a debt which is to be secured. It will not be construed as a power to make a mortgage to secure someone else's debt. Similarly if a power of attorney conveys no express power to borrow money for the principal, such a power will not be imported into it. 11 Manresa, Comentarios, 450; Villar v. Registrar of Property, 17 P. R. R. [412] 434; Iturrondo v. Registrar of Property, 17 P. R. R. [414] 437; Llull v. Registrar of Property, 20 P. R. R. [412] 440.

Diez v. Green.

The power of attorney, in other words, is, under the civil law as at common law, strictly construed.

Sec. 1615, Civil Code: "An agency stated in general terms only includes acts of administration. In order to compromise, alienate, mortgage, or to execute any other act of strict ownership an express commission is required. The power to compromise does not give authority to place the matter in the hands of arbitrators or amicable compromisers." [Compilation 1911, § 4721.]

And to the same effect is Escriche, Diccionario Razonado, p. 1417; for the principle is an old one in the Spanish civil law and antedates the Code. Under these principles Perez had the right to sign a promissory note for Diez and to have executed a mortgage to secure it, for these powers were expressly given. But he did not do this. What he did was to indorse the note of his own firm in the name of Diez and give a mortgage to secure the indorsement. Was this within the scope of his authority?

The power of attorney expressly authorizes him (4) "to subscribe, indorse, and protest . . . promissory notes and any other class of . . . mercantile documents." It may be that this was intended to include indorsing the note of the firm in which Diez was the silent partner. If so, the third power "to grant . . . a mortgage" would also apply. But under the principle of strict construction this power of indorsement must be held strictly to relate only to paper made to Diez and indorsable by him. Indorsing the paper of the firm was at least not clearly within the power of attorney.

2. The case, however, is not so simple as this. It is true that Diez was not an active member of the firm in question, but

he was a silent partner, and unless the firm tided over financial difficulties he would not receive any profit on his investment, and indeed would lose the investment itself. Under these circumstances Diez gives a power of attorney to one of the active partners, whom he was leaving in charge of his individual business, and the wording of the power of attorney is very broad as to protecting the interest of Diez himself. Giving a mortgage to secure this interest cannot therefore be said to be without the spirit of the power of attorney, whatever may be the fact as to its letter. On the other hand, the mortgage is not drawn on the theory of securing the firm debt. It expressly says that Diez is indebted to Green in the sum of $5,000. It is quite true that absolute expressions of this kind are not uncommon in mortgages and conveyances in order to observe the forms of the law, and if signed by the party to be bound they may well be held to be binding upon him. In the case at bar, however, the mortgage was not signed by the person sought to be bound; the bill in question expressly repudiates the mortgage. If a suit was brought to foreclose the mortgage it is doubtful, whether, on the facts shown, there could be a decree of foreclosure, for there was no direct personal indebtedness as recited. Could, however, the mortgage be reformed in equity so as to conform to the actual facts of a collateral liability, that is to say, an obligation to secure an indorsement, and then be enforced? It would not be well to consider this point until it is directly presented.

3. It is sought to maintain the validity of the mortgage on the ground that, whatever it might have been in its inception, while Diez was in Spain, the obligation was ratified by Diez after his return to Porto Rico in August, 1914. The evidence

is in conflict on the point. On the one hand defendant Green testifies that on September 8, 1914, he mentioned the increase of the mortgage to Diez, and Diez told him it was all right, to go on dealing with Perez. A month later one Urrutia testifies that he called on Diez for interest in the matter and was told to collect it from Perez. Diez denies both of these conversations. On the whole, the conclusion must be that they occurred. It is true that Green seems to have found it necessary in the succeeding April, after the fire which destroyed the solvency of the firm, to make a demand upon Diez, and at that time Diez professed to know nothing of the mortgage. Green thereupon brought him a copy of the mortgage and showed it to him. Diez says this was the first that he knew of the transaction, but the preponderance of the evidence is otherwise. Diez must be held to have known of the transaction at least from the conversation with Green in September, and to be bound by it, whatever it amounts to.

But what did it amount to? It is objected in the first place that there was no ratification because Diez was not acquainted with the transaction which it is claimed he ratified. There is no doubt that there can be no ratification without knowledge, that one is not held bound by something that he does not know about. The information must be as clear at the time of the ratification as it should have been had the obligation been made directly in the first place. Brown v. Bamberger, 110 Ala. 342, 20 So. 114. To the same effect is 31 Cyc. 1256. The civil law is not different from the common law on this point. Escriche, Diccionario Razonado, 1481. Whatever might be true as to details of the mortgage supposed to be ratified, if the conversation testified to by Green took place, and this seems

to be a fact, Diez was informed that there was a mortgage for $5,000, and he adopted it. Brown v. Bamberger, supra.

Moreover, apart from the question of actual notice, Diez was bound by the registration of the power of attorney. The Mortgage Law expressly makes the registration notice to third parties. If Diez, particularly after his return, is not to be construed as one of the parties to the instrument, he certainly was a third party, and must be held to be affected by it. The general principle of registration is that a man is construed to be bound by papers recorded affecting his own property.

It is doubtless true that there can be no ratification of a void instrument, that is to say, it is self-evident that if there is no contract there can be nothing to ratify. In the civil law also it is necessary that the contract to be validated be not one having an essential nullity at the beginning. Quia quod ab initio non valet, ex post facto convalescere non potest." Escriche, Diccionario Razondo, 1481. But, on the other hand, if the contract were complete, there would be no need for ratification. "Ratification proceeds upon the theory that there was no previous authority, and acts as a substitute for such authority." 31 Cyc. 1260. In the case at bar the ratification was of a supposed indorsement and mortgage securing it which were for the benefit of a firm in which Diez was interested. It cannot be said that there was nothing to ratify. There was, therefore, sufficient knowledge of the transaction claimed to be ratified, and the transaction itself was one in which Diez was interested and which he therefore might be supposed to have an interest in ratifying.

4. There is no doubt that ratification implies more than words. A ratification is like any other contract, for it is in

Diez v. Green.

effect, one form of contract. · It must itself have the three elements making up contracts.

Civil Code, § 1228: "There is no contract unless the following requisites exist: 1. The consent of the contracting parties. 2. A definite object which may be the subject of the contract. 3. The cause for the obligation which may be established." [Compilation 1911, § 4334.]

One of these is causa, practically the common-law consideration. If Diez, in the transaction in hand, merely said that it was all right and thereafter the condition of the parties was unchanged, it may well be that he would not be bound as by a legal ratification; for there would be no consideration moving to to him, or disadvantage moving to Green, which would change the situation from what it was on the 7th of September. But this was not the case. The words clearly implied that Green was to keep on with his transactions with Perez, and he apparently did so. He did not foreclose against Diez, and did not sue Perez, as he might be expected to do. The result is that certainly after the fire of the succeeding January the position of Green as regards Perez was changed for the worse, for the other partner withdrew, the firm itself was insolvent, and Perez was no better. If Green had not relied upon the words of Diez, it would seem that he could even in September have taken proceedings against the firm. It follows, therefore, that there was a disadvantage accruing to Green, and this must be held to be a sufficient consideration to make the words of Diez amount to a ratification.

5. It is doubtless true that, where the law requires a particular form of contract, the ratification of the contract must be of the same solemnity that the execution should have been.

Diez v. Green.

The stream cannot rise higher than its source. 31 Cyc. 1260. Civil Code, § 1776. "Besides the requisites mentioned in § 1778, it is indispensable, in order that the mortgage may be validly constituted, that the instrument in which it is created be entered in the registry of property.

The persons in whose favor the law creates a mortgage shall have no other right than to demand the execution and entry of the instrument in which the mortgage may be constituted, without prejudice to the provisions of the mortgage law in favor of the People of Porto Rico and of the municipalities, for the amount of the last year's taxes, and in favor of the underwriters for the premium of the insurance." [Compilation 1911, § 4882.]

It is to be remembered, however, that this is not a suit to enforce the mortgage. If there was a binding ratification, the ratification would have the effect of implying all that was necessary to the enforcement of the original contract, which was already recorded. Under the Civil Code a contract is a question of intention, rather than of a form, despite the elaborate formality of many parts of the Civil Code.

Civil Code, § 1248. "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties the intention shall prevail."

Sec. 1249. "In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract." [Compilation 1911, §§ 4354, 4355.]

This is one of the notable characteristics of the Spanish

Diez v. Green.

civil law, and comes down from a very early period, that of the Laws of Toro. It was in effect the success of a revolt against the formality of the Roman law which threatened to overwhelm the freer spirit of Gothic Spain, and is quite in line with the principle of equity that, if the intention of the contract is clear and there is no objection otherwise, it will be enforced.

It is true that under the Porto Rican law it is essential to the validity of a mortgage that it be recorded. Civil Code, § 1776. But it does not follow that the ratification of a power of attorney to make the mortgage must be by a formal instrument and also recorded. If a mortgage is made in the name of a party under a verbal power of attorney, and this is ratified by the party orally and acted upon to his disadvantage by the grantee, the person to be bound by the mortgage will in equity at least be held bound by it. Any other construction would eliminate ratification altogether, for if the new instrument required would have to be a new mortgage there would be no necessity for any ratification. In the case at bar the plaintiff seeks the equity of having a mortgage canceled which he alleges he did not make, and in considering the case the court must refuse him this remedy if it appears that in equity he has ratified the transaction, whatever may be the defects of form.

The conclusion resulting from this consideration of the pleadings and evidence as presented is that plaintiff has not made out a case satisfactorily entitling him to the cancelation prayed, and relief must be denied, and a decree must be entered dismissing the bill, with costs to defendant.

It is so ordered.